**Ray Dan PIERCE, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 8720.**

United States Court of Appeals
Tenth Circuit.

Aug. 26, 1966.

J. A. Dickinson, Topeka, Kan. (Mary Margaret Parr, Topeka, Kan., on the brief), for appellant.

Benjamin E. Franklin, Asst. U. S. Atty. (Newell A. George, U. S. Atty., on the brief), for appellee.

Before PHILLIPS, JONES* and BREITENSTEIN, Circuit Judges.

JONES, Circuit Judge.

The appellant, Ray Dan Pierce, was charged by an information, having waived indictment, with willfully and knowingly making threats to take the life, and inflicting bodily harm upon The President of the United States in violation of 18 U.S.C.A. § 871. He was found guilty by the verdict of a jury and sentenced to two months imprisonment and 22 months probation. From the judgment of conviction and sentence, Pierce has appealed.

There is little dispute as to the facts. When Pierce was 16 years old, he left school without finishing the 10th grade. Soon after he became 17 and with his father's consent, he entered the Navy. After preliminary training he was assigned to the USS Mills which was stationed at Key West, Florida. He believed himself to be entitled to a leave of absence. This was denied him and he left his ship without leave. He stayed in Miami for a few days and then went to Fort Worth, Texas, where his parents resided. While he was at the home of his parents they received a letter from the Navy advising them that their son was AWOL. His parents urged him to go back to the Navy but he did not do so. He left Fort Worth and went to Lawrence, Kansas, and worked there for two weeks. When it was learned in Lawrence that he was absent without leave from the Navy, he went to Holton, Kansas. The police there were on the lookout for him and took him into custody. At first he gave an assumed name but later admitted his identity. He was placed in the city jail at Holton to wait until the Navy could send for him. He was put into a double cell or rather two cells separated by bars with an open door between them. After about 24 hours Orville Pahmahmie, who had been arrested for drunkenness, was placed in the other compartment of the cell. Pahmahmie was talka-tive, and he and Pierce talked. Pierce asked one of the officers for paper to write to a sister or sister-in-law. After covering a good part of one side of the paper, he remembered that he did not have her address and with his pencil he effaced what he had written. He turned the paper over and wrote

I Ray Dan Pierce hear by [sic] being of sound mind & body do hearby [sic] swear to kill the President of the United States of America the first chance I get.

The foregoing was followed by an obscene remark and a statement disowning American citizenship and proclaiming feathy [sic] to Russia. After writing the above language, Pierce pencilled in over the beginning of it the words "Dear Mr. Johnson." He turned the paper over and wrote across the bottom of it "and by the way send me $100.00 for cigarette money." He handed the paper to one of the Holton officers and asked him to mail it. The officer asked him "who to?" and Pierce replied "The White House." On being told that the matter would have to be reported, Pierce responded that he didn't care. The following day Pierce was visited by a Secret Service agent and to him Pierce stated, which he had not done on the preceding day, that the whole matter was a joke between his drunken cellmate and himself. At the trial the facts as outlined were before the jury. Pahmahmie was called as a witness and said that he remembered nothing that happened, and the inference was inescapable that he was too intoxicated to remember what happened. Perhaps not here pertinent but it may be noted that Pierce testified that he shook hands with President Kennedy on November 22, 1963, prior to his assassination. There was evidence that Pierce had been bitter because his request for leave had been denied.

The court denied the defendant's motion for a directed verdict. The court refused to give his requested instruction that if the words were written idly or in jest, then the act was not knowingly

* of the Fifth Circuit, sitting by designation.

and willfully done within the meaning of the statute. The court instead gave an instruction that a threat is knowingly made if the maker of it comprehends the meaning of the words uttered by him and that a threat is willfully made if in addition to comprehending the meaning of the words, the maker voluntarily and intentionally utters or writes them as the declaration of an apparent determination to carry them into execution. The jury was given an instruction that the claim that the language used in the written document was a joke, not made in earnest but made in fun, is not a defense. The decisive issue on the appeal is whether threats made in jest were a violation of the statute.

■ In support of his contention, Pierce relies heavily upon United States v. Reid, D.C.W.D.La.1943, 49 F.Supp. 313, aff. Reid v. United States, 5th Cir. 1943, 136 F.2d 476, cert. den. 320 U.S. 775, 64 S.Ct. 87, 88 L.Ed. 465, reh. den. 320 U.S. 813, 64 S.Ct. 156, 88 L.Ed. 491. In considering whether evidence as to Reid's sympathy for Germany in World War II was admissible, the district court said:

"As stated then, it was thought that this was admissible to show intent or the state of defendant's mind as to the wilful and serious nature of the statement, as against idle talk or joking."

Whether idle talk or joking is a defense was not a question in the case. The Reid case is not an authority for the proposition that idle talking or joking is a defense to the statutory offense of which Pierce has been convicted. The court in the Reid case cited with approval United States v. Stobo, D.C.Del. 1918, 251 F. 689, where it was said that one who makes threats against the President cannot shield himself by a plea that the words were uttered lightly and without intent to do bodily harm.

It is the making of the threat, not the intent to carry it out, that violates the statute. United States v. Daulong, D.C. W.D.La.1945, 60 F.Supp. 235; United States v. Stickrath, D.C.S.D.Ohio 1917, 242 F. 151.

In Ragansky v. United States, 7th Cir. 1918, 253 F. 643, the accused claimed, as Pierce claims here, that he was not in earnest, but was joking, when he made the threat. The trial court had instructed the jury that "the claim that the language was used as a joke, in fun" was not a defense. In giving its approval to the jury instruction, the Court of Appeals interpreted the meaning of "knowingly" and "willfully", in this manner:

"A threat is knowingly made, if the maker of it comprehends the meaning of the words uttered by him; * * *

"And a threat is willfully made, if in addition to comprehending the meaning of his words, the maker voluntarily and intentionally utters them as the declaration of an apparent determination to carry them into execution."

■ That the quoted language expressed the rule and a guide to be followed by a jury in determining the guilt or innocence of a person accused of violating the statute is shown by Michaud v. United States, 10th Cir. 1965, 350 F.2d 131, where this Court cited Ragansky v. United States, supra, with approval and in its opinion quoted the statement of principles which we have here excerpted from the Ragansky case. We think the court did not err in the giving and refusing of instructions.

The other matters which Pierce would have us consider need not be discussed. They are without merit.

The judgment of the district court is

Affirmed.