**Eugene F. ALEXANDER, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**Nos. 21330, 21941.**

United States Court of Appeals District of Columbia Circuit.

Argued Sept. 24, 1968.

Decided June 25, 1969

---

Mr. Foy R. Devine, Washington, D. C., with whom Mr. William W. Greenhalgh, Washington, D. C. (both appointed by this court in No. 21,330), was on the brief, for appellant. Mr. Devine was appointed by the District Court for appellant in No. 21,941.

Mr. Charles E. Brookhart, Atty., Dept. of Justice, of the bar of the Supreme Court of Virginia, pro hac vice, by special leave of the court, with whom Messrs. David G. Bress, U. S. Atty. at the time the brief was filed, and Frank Q. Nebeker, Asst. U. S. Atty. at the time the brief was filed, were on the brief, for appellee.

Before BAZELON, Chief Judge, and McGOWAN and ROBINSON, Circuit Judges.

**SPOTTSWOOD W. ROBINSON, III,** Circuit Judge:

Appellant was convicted by a jury on two counts of "knowingly and willfully" threatening the life of the President of the United States.[1] The charges stemmed from a series of five successive calls appellant admittedly made to the White House on the evening of July 23, 1966, from a public telephone in the lobby of the apartment building in which he resided. The White House operator directed the calls to Secret Service agents who taped them, and at appellant's trial the tape was admitted into evidence and played to the jury.

The calls, excluding interruptions, consumed a total of about 50 minutes, and were interspersed profusely with discussions of "the War in Viet Nam," the "Russians," and other topics of a controversial political nature. They also embraced what were described as "approximately six statements of a threatening nature," and these became the basis of the prosecution. At the agents' request, appellant provided his name, address and telephone number, and agreed to await the arrival of other agents. More than an hour after the first call was placed, the latter agents found appellant still in the telephone booth talking to their colleagues.

The sole defense offered at trial was that appellant was too intoxicated to form the specific intent which is an essential element of the offense charged, and the evidence made it clear that appellant had been drinking heavily during the day. Witnesses for the Government admitted that they detected the odor of

---

1. 18 U.S.C. § 871(a) (1964) provides:
"Whoever knowingly and willfully deposits for conveyance in the mail or for a delivery from any post office or by any letter carrier any letter, paper, writing, print, missive, or document containing any threat to take the life of or to inflict bodily harm upon the President of the United States, the President-elect, the Vice President or other officer next in the order of succession to the office of President of the United States, or the Vice Presi-

dent-elect, or knowingly and willfully otherwise makes any such threat against the President, President-elect, Vice President or other officer next in the order of succession to the office of President, or Vice President-elect, shall be fined not more than $1,000 or imprisoned not more than five years, or both."
Each count charged the making of the same threats in the hearing of a different Secret Service agent.

alcohol when appellant was arrested, but concluded, on the basis of his manner of speech and action, that he was in control of himself by the time he initiated the calls to the White House.

Appellant brought this litigation here by separate appeals from the conviction and the denial of his motion for a new trial.[2] As matters turn out, it is unnecessary for us to consider the points upon which he originally relied for reversal. While these appeals were pending, the Supreme Court, in another case, gave the statute upon which this prosecution was laid a construction materially at variance with the law by which the jury measured appellant's guilt. With prejudice to appellant's substantial rights flowing therefrom, we set his conviction aside and remand the case to the District Court for a new trial.

## I

Shortly after oral argument before us, Watts v. United States,[3] involving a conviction under the same statute, was decided by another division of this court, and a review was sought in the Supreme Court. Because contentions were pressed in *Watts* which, if accepted, would substantially affect appellant's case, we issued an order deferring our disposition pending the Supreme Court's action. What eventuated in *Watts* was an interpretation of the statute requiring the proof of a "true 'threat,'"[4] and a direction of Watts' acquittal because the state-

ments he made, partly in consequence of their conditional character, were a "'kind of very crude offensive method of stating a political opposition to the President'" which did not amount to a "threat."[5]

*Watts* represented the Supreme Court's first construction of the statute, an endeavor in which various other federal courts had engaged.[6] Some of these courts,[7] on whose holdings the majority of our *Watts* panel relied,[8] had expanded the concept of a "threat" so broadly as to include utterances employing violent words intended and understood as mere jokes or political hyperbole. The Supreme Court, however, admonished that "we must interpret the language Congress chose 'against the background of a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials.'"[9] Thus, ruled the Court, to support a conviction under the statute, "the Government [must] prove a true 'threat.'"[10]

At appellant's trial, the court quite understandably adopting pre-*Watts* doctrine, charged the jury that a "threat" was a "declaration of intention to injure another by the commission of an unlawful act," but that the offense could be committed by "merely idle talk or jests" and that it was not a defense "that the alleged threats were uttered condition-

---

2. His contention on these appeals is that he should have a new trial because in his defense, allegedly due to no fault ascribable to him, certain evidence of his intoxication did not get before the jury.

3. 131 U.S.App.D.C. 125, 402 F.2d 676 (1968), rev'd 394 U.S. 705, 89 S.Ct. 1399, 22 L.Ed.2d 664 (1969).

4. 394 U.S. at 708, 89 S.Ct. at 1401.

5. *Id.*

6. See the cases discussed in Watts v. United States, *supra* note 3, 402 F.2d at 687–689 (dissenting opinion).

7. See Rothering v. United States, 384 F.2d 385 (10th Cir. 1967); Pierce v. United States, 365 F.2d 292 (10th Cir. 1966).

8. See Watts v. United States, *supra* note 3, 402 F.2d at 680–681.

9. Watts v. United States, *supra* note 3, 394 U.S. at 708, 89 S.Ct. at 1401, quoting New York Times Co. v. Sullivan, 376 U.S. 254, 270, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964).

10. Watts v. United States, *supra* note 3, 394 U.S. at 708, 89 S.Ct. at 1401.

ally." The court also charged that appellant's intoxication was of moment only if it attained such a degree as to negate his capacity to entertain specific intent. By reflecting these now rejected characteristics of a "threat," the charge thus gave the jury erroneous instructions on a vital element of the offense. Neither "idle talk" nor mere "jest" is a "true 'threat,' " and the conditional nature of a statement, whether or not a complete defense, is certainly a factor bearing on the question whether the statement is an exaggerated expression rather than a "threat." [11] We note, too, that the charge did not mention the necessity, in determining whether a threat was made, of examining the statement in its full context.[12] A jury properly instructed on this score might have found that appellant's undisputed consumption of a large quantity of alcohol was also relevant to that question and not, as the trial judge charged, a circumstance probative only in relation to specific intent.

▮▮▮▮ These are flaws in appellant's trial of a type we cannot ignore. True it is that in the absence of objection before the jury retires to deliberate, we normally do not notice errors in the charge.[13] But in resolving appeals we are "bound to consider any change, either in fact or in law, which has supervened since judgment was entered." [14] Where the trial court has followed case law then but no longer prevailing, "our disposition is uninhibited by the requirement that issues proffered on appeal must normally be raised and decided initially in the trial court." [15] Thus we are brought to the remaining question whether the errors in the charge necessitate reversal.

## II

Appellant was entitled to have the issue as to whether his statements constituted a "threat" properly submitted to the jury.[16] It follows that if the evidence suggested inquiries for the jury on that issue which the charge erroneously foreclosed, appellant must have a new trial. Our examination of the record reveals a close correspondence between the errors and logical questions imbedded in the evidence.

In his telephone conversations, appellant discussed the war in Vietnam, "Russia," crime, and "Washington politicians," and as well voiced concern for his daughter and wife. During 50 minutes of dialogue, he made, as we have stated, approximately six statements that Secret Service agents characterized from the witness stand as threatening. The record on appeal does not contain the tape itself or a transcription thereof, but the testimony uniformly indicates that most if not all of these statements were patently conditional.[17]

All circumstances considered, a jury conceivably could have deemed appel-

---

11. "Taken in context, and regarding *the expressly conditional nature of the statement and the reaction of the listeners* we do not see how it could be interpreted" except as hyperbole. Watts v. United States, *supra* note 3, 394 U.S. at 708, 89 S.Ct. at 1402 (emphasis supplied).

12. See note 11, *supra*.

13. Fed.R.Crim.P. 30.

14. Patterson v. Alabama, 294 U.S. 600, 607, 55 S.Ct. 575, 578, 79 L.Ed. 1082 (1935). See also Pendergrast v. United States, 135 U.S.App.D.C. 20, 416 F.2d 776 (1969) cert. denied 395 U.S. 926, 89 S.Ct. 1782, 23 L.Ed.2d 243 (1969).

15. Wright v. United States, 131 U.S.App. D.C. 279, 283 n. 22, 404 F.2d 1256, 1260 n. 22 (1968). See also the cases cited *supra* note 14.

16. See Roth v. United States, 354 U.S. 476, 489–490, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957) ; Yates v. United States, 354 U.S. 298, 320, 77 S.Ct. 1064, 1 L.Ed. 2d 1356 (1957) ; Dennis v. United States, 341 U.S. 494, 512, 71 S.Ct. 857, 95 L.Ed. 1137 (1951). See generally Richardson, Freedom of Expression and the Function of Courts, 65 Harv.L.Rev. 1, 27–32 (1951).

17. Typical statements were "If I had a gun I would blow President Johnson's brains out." and "Do you think I wouldn't do it if I had the artillery to do it with?"

lant's statements hyperbole, expressing strong disagreement with the President and his policies, rather than as threats upon his life.[18] While evening telephone calls to the White House are an offensive, bizarre medium for communication—and this might well have led the jury to accept the utterances as threats—appellant's third-grade education and excessive drinking increased the probability of expression in an unaccustomed way. These factors do not outlaw the possibility that the calls were threats, but they do tend to weaken any inference to be derived from their timing and destination.[19] Moreover, appellant's cooperation in telling the Secret Service of his whereabouts and waiting for their arrival could perhaps be seen as impressing on his language of violence a much less ominous connotation.

In determining whether the errors in the charge were prejudicial, our task is not to judge whether appellant made a threat,[20] for that is for a jury,[21] "[n]or is it [for us] to speculate upon probable reconviction * * *."[22] It is our responsibility, however, to reverse appellant's conviction unless we can say "with fair assurance, after pondering all that happened without stripping the er-

roneous action from the whole, that the judgment was not substantially swayed by the error."[23] Here the evidence offered a number of possible inferences, leading both to guilt and to innocence, for the factfinders to consider. The charge excluded some of these inferences from the jury's consideration and led it astray as to others. Because we can only speculate as to the resulting impact on the jury, we must send the case back to the District Court for a new trial.

In so doing, we reemphasize the view that the statute defining the crime of threatening the President is constitutional on its face.[24] We take care to point out that we have held neither that appellant's statements are constitutionally protected nor that the Government failed to adduce sufficient evidence to enable a jury to conclude beyond a reasonable doubt that they contained the ingredients of threats.[25] What we have decided, and all that we have decided, is that appellant cannot stand convicted unless and until a jury acting under proper instructions finds from what appellant said that indeed he did make an unlawful threat.

Reversed and remanded for a new trial.

---

18. See note 11, *supra.*

19. See note 11, *supra.*

20. *E. g.,* Kotteakos v. United States, 328 U.S. 750, 763, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946).

21. See the cases cited *supra* note 16.

22. Kotteakos v. United States, *supra* note 20, 328 U.S. at 763, 66 S.Ct. at 1247.

23. *Id.* at 765, 66 S.Ct. at 1248. We do not reach the question whether appellant's statements were to any extent protected by the First Amendment, and a new trial

is in any event required by the *Kotteakos* standard. Consequently, we need not decide whether the Government would otherwise be required to meet the more stringent *Chapman* test in order to sustain the conviction. See Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

24. Watts v. United States, *supra* note 3, 394 U.S. at 707, 89 S.Ct. at 1401.

25. Other reasons aside, the absence of the tape from the record on appeal would effectively preclude consideration of such issues.