Darryl A. COLES, Appellant,

v.

UNITED STATES, Appellee.

No. 81–539.

District of Columbia Court of Appeals.

Argued Sept. 21, 1982.

Decided Nov. 22, 1982.

---

John A. Turner, Jr., Washington, D.C., appointed by the court, for appellant.

Robert B. Lyon, Jr., Asst. U.S. Atty., with whom Stanley S. Harris, U.S. Atty., John A. Terry, Asst. U.S. Atty., at the time the brief was filed, and Marc B. Tucker, Asst. U.S. Atty., Washington, D.C., were on brief, for appellee.

Before FERREN, PRYOR and BELSON, Associate Judges.

PER CURIAM:

Pursuant to a jury trial, appellant was convicted of receiving stolen goods (D.C. Code 1981, § 22–2205), and unauthorized use of a vehicle (D.C.Code 1981, § 22–2204). The court sentenced appellant to concurrent prison terms of three to nine years for receiving stolen goods, and one to three years for the unauthorized use of a vehicle. This appeal followed. Appellant alleges that he was deprived of his right to a speedy trial; he also urges that, in separate instances of cross-examination of appellant and a defense witness respectively, the court committed error by allowing the prosecutor to use prejudicial methods in attempting to impeach the witnesses. After considering these allegations, and having found no reversible error, we affirm.

I

On December 11, 1979, Officers John S. Pyles and Terry L. Everett of the Metropolitan Police, witnessed appellant operating a motorcycle at a high rate of speed in the District of Columbia. The two officers, who were driving an unmarked vehicle, followed appellant. After conducting a radio check, it was revealed that the license tag on the motorcycle was reported stolen on June 24, 1979. The vehicle driven by appellant became disabled, and appellant pulled the motorcycle away from the flow of traffic. At that juncture the two officers

placed appellant under arrest. It was later discovered that the motorcycle had been reported stolen from another party on December 2, 1979.

## II

In evaluating appellant's speedy trial claim, we apply the four factor test enunciated by the Supreme Court in *Barker v. Wingo,* 407 U.S. 514, 530, 92 S.Ct. 2182, 2191, 33 L.Ed.2d 101 (1972), and analyze: "(1) length of delay; (2) the reasons for the delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant." These factors are not determinative when viewed singly. Rather, they provide a guideline from which a "difficult and sensitive balancing process" evolves. *Id.* at 533, 92 S.Ct. at 2193; *Bowman v. United States,* D.C.App., 385 A.2d 28, 30 (1978).

The speedy trial provision has no application until "the putative defendant in some way becomes an accused." *United States v. Marion,* 404 U.S. 307, 313, 92 S.Ct. 455, 459, 30 L.Ed.2d 468 (1971). Appellant gained this status at the time of his arrest on December 11, 1979, and was not brought to trial until February 19, 1981. This fourteen-month delay does establish a prima facie Sixth Amendment violation. *Towles v. United States,* D.C.App., 428 A.2d 836, 841 (1981); *Day v. United States,* D.C.App., 390 A.2d 957, 964 (1978); *Branch v. United States,* D.C.App., 372 A.2d 998, 1000 (1977). However, no constitutional basis exists for "holding that the speedy trial right can be quantified into a specified number of days or months." *Barker v. Wingo, supra* 407 U.S. at 523, 92 S.Ct. at 2188.

A preliminary hearing was held on January 11, 1980, followed by five status conferences which were held on February 1, February 19, March 11, April 7, and April 24, respectively. Appellant was indicted on April 30, 1980. A final status hearing was held on June 23, 1980, and a trial date was scheduled for July 18, 1980. This delay of approximately seven months from appellant's arrest was consumed by routine matters. While the delay is attributable to the government, the government "cannot be strongly faulted." *Freeman v. United States,* D.C.App., 391 A.2d 239, 241 (1978). *Barker v. Wingo, supra* 407 U.S. at 531, 92 S.Ct. at 2192.

On July 11, 1980, a continuance was sought until early September because of the unavailability of the prosecutor's complaining witness. Due to a congested court calendar, a new trial date could not be scheduled until October 2, 1980, producing a three month delay; two of which are attributable to the government, and one of which is attributable to the court.

On October 2, a new trial date was scheduled for November 4, due to the court's unavailability, causing an additional month's delay. The delay between November 4, and December 11 is chargeable to the defense counsel, who realized that a conflict of interest had arisen out of his personal relationship with the complaining witness. At this point, appellant demanded appointment of new counsel. The court said it would do so if appellant agreed not to press his speedy trial claim. Appellant agreed. The final two month delay involved mutual continuances, and is neutral in nature. While the major portion of the fourteen month delay is attributable to the government, no intent to harass or gain advantage over appellant is apparent. *United States v. Bolden,* D.C.App., 381 A.2d 624, 628 (1977); *United States v. Marion, supra* 404 U.S. at 325, 92 S.Ct. at 465.

Appellant failed to properly assert his right to a speedy trial.[1] As emphasized in *Barker v. Wingo, supra* 407 U.S. at 532, 92 S.Ct. at 2193, the "failure to assert the right will make it difficult for a defendant (appellant) to prove that he was denied a speedy trial." Moreover, on November 4, 1980, appellant indicated that his desire for new counsel (thus further delaying the proceedings) was more important than his speedy trial request.

---

1. The record suggests that appellant asserted a *pro forma* motion for want of prosecution on

October 2, 1980, and thereafter abandoned the demand.

At the time of his arrest, appellant was serving an indeterminate youth sentence for an unrelated offense. Appellant contends that the fourteen month delay negatively affected his sentence in that case, but he fails to identify any prejudicial effect. Appellant further contends that he experienced difficulty in preparing for trial while incarcerated; however, the record does not substantiate this allegation.

■ The absence of prejudice, appellant's failure to assert his right, coupled with his willingness to delay trial in order to obtain new counsel, and the lack of "unseemly motive" on the part of the government, *Asbell v. United States,* D.C.App., 436 A.2d 804, 812 (1981), compel the conclusion that appellant was not deprived of his Sixth Amendment right to a speedy trial.

### III

During the course of appellant's direct testimony his counsel elicited the fact that he had previously been convicted of robbery. The prosecutor, on cross-examination, brought out that initially there had been three robbery charges, and that, as a result of a plea bargain arrangement, appellant pleaded guilty to one count and the other charges were dismissed by mutual agreement. Although there was no objection raised at trial, appellant now claims reversible error.

■ There is no doubt in this jurisdiction that when a defendant takes the stand, the court is obliged to allow the prosecution to attack his or her credibility through the introduction of prior conviction for felonies and other crimes involving dishonesty or false statement. D.C.Code 1981, § 14–305; *Hill v. United States,* D.C.App., 434 A.2d 422, 429 (1981). While a robbery conviction is within the purview of § 14–305, the section does not encompass charges which were dropped in exchange for a guilty plea. Thus, questions by the prosecutor, regarding charges which had been dismissed, were improper. Although counsel did not object

nor request any cautionary instruction to the jury when the alleged error occurred, the court instructed the jury on impeachment by prior conviction. While we acknowledge the distinction between a prior conviction and a prior arrest, the overall tenor of the jury instruction pivoted on credibility of the defendant as a witness, and did serve to mitigate any prejudice engendered by the prosecutor's questions.

For the prosecutor's conduct to constitute plain error, the error must be so clearly prejudicial to appellant's substantial rights as to jeopardize the very fairness and integrity of the trial. *Johnson v. United States,* D.C.App., 387 A.2d 1084, 1089 (1978); *Watts v. United States,* D.C.App., 362 A.2d 706, 709 (1976) (en banc).

In view of the nature of this claim, the strength of the government's case,[2] the absence of a defense objection to the prosecutor's questions, and the fact that the court gave mitigating instructions to the jury, we conclude that the prosecutor's conduct, while improper, does not constitute plain error.

### IV

Finally, appellant contends that the trial court erred in allowing the prosecutor to ask certain questions, over defense objection, which were intended to lay a foundation for impeachment by prior inconsistent statement of defense witness, Keith Daughtry. The applicable excerpts of Mr. Daughtry's cross-examination are as follows:

Q. Now, between the time that you saw [appellant] get this bike from Keith Daughtery, and the time you saw him the morning of his arrest, you saw him on the bike a number of other times; right?

A. I fail to recall.

Q. You recalled yesterday that you saw him twice on Independence Avenue; didn't you?

[DEFENSE COUNSEL]: Objection, Your Honor. He can't testify to that.

[PROSECUTOR]: A prior inconsistent statement, Your Honor.

\*　　\*　　\*　　\*　　\*　　\*

---

**2.** Appellant was arrested while operating a stolen motorcycle a few days after it had been reported missing. The motorcycle was bearing tags from a second stolen vehicle.

Q. Didn't you tell me yesterday that you saw him speeding, not just driving, speeding on that motorcycle on Independence Avenue at least two times? Isn't that what you told me?

A. I fail to recall.

Q. You don't recall that?

A. No, sir.

Q. You think my notes would refresh your memory?

A. Possibly.

\* \* \* \* \* \*

Q. Have you had an opportunity to take a look at the notes, Mr. Daughtry?

A. Yes, sir.

Q. Does that refresh your memory about whether or not you saw Mr. Coles speeding the two days between the time you saw this Mr. Daughtery bring in the bike and the time he was arrested.

A. No, sir.

Q. It doesn't refresh your memory.

\* \* \* \* \* \*

Q. Now, just one other thing, this Keith Daughtery, the one whose name is so much like yours, you know him too; right?

A. We have met.

\* \* \* \* \* \*

Q. Do you have any idea where he lives?

A. Nope.

Q. Why did you tell me Willard Avenue yesterday?

A. I didn't tell you Willard Avenue.

■ Relying upon this court's decision in *Leon v. United States,* D.C.Mun.App., 136 A.2d 588 (1957), appellant asserts that the effort at impeachment on the basis of prior inconsistent statements was incomplete in this instance, and served to prejudice the jury against the witness and inferentially against appellant. In *Leon,* in similar circumstances, we held that such questions, though "proper at the time they were asked," should have been followed by independent evidence of the alleged conversations. In that case, the court's instruction to the jury to the effect that the prosecutor was "bound by the answer given," served to

cure sufficiently any resulting prejudice. *Id.* at 590. In the instant case, however, no such instruction was given by the trial court.

■ Given the trial court's error in allowing the prosecutor to attempt impeachment by alluding to prior inconsistent statements of the witness without a proper foundation, or at least in not giving a proper instruction that the prosecutor was bound by the answer, it is the function of this court to reverse appellant's conviction unless we can say "with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error." *Kotteakos v. United States,* 328 U.S. 750, 763, 66 S.Ct. 1239, 1247, 90 L.Ed. 1557 (1946); *Alexander v. United States,* 135 U.S.App.D.C. 367, 418 F.2d 1203 (1969).

Appellant's defense at trial was that Keith *Daughtery* (who is not to be confused with defense witness Keith Daughtry) had left the motorcycle with appellant at his place of employment for the purpose of having it repaired. Appellant further alleged that he drove the vehicle home for lunch, and that on his return to his place of business, he was apprehended by police for driving a vehicle with a stolen license plate. Keith *Daughtery* was never produced at trial, and, in fact, serious doubt was cast on the plausibility of his existence.

Officer Don S. Sauls, who testified on behalf of the government, stated that at the time of his arrest, appellant claimed to have "bought the bike from a subject known to him as Keith Daughtry" who resided at "602 Tennessee Avenue." It was revealed that this address matched that of defense witness Keith Daughtry, strongly suggesting that the alleged Keith *Daughtery* does not exist. Appellant was never able to successfully corroborate his defense, while numerous inconsistencies surfaced at trial.

After evaluating the full panoply of the occurrences at trial, we can say with fair assurance that the jury was not substantially swayed, and that the erroneous action was harmless.

*Affirmed.*