*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

LUCAS DANIEL GERHARD,

        Defendant-Appellant.

FOR PUBLICATION
June 24, 2021
9:05 a.m.

No. 354369
Chippewa Circuit Court
LC No. 19-003949-FH

Before: JANSEN, P.J., and M. J. KELLY and RONAYNE KRAUSE, JJ.

RONAYNE KRAUSE, J.

In this interlocutory appeal, defendant appeals by leave granted[1] the order denying his motion to quash the charge of making a threat of terrorism, MCL 750.543m, on which he was bound over from the district court. Importantly, the issue is not whether defendant actually made a threat of terrorism, which would be a question for the trier of fact. Rather, the issue is whether, on these facts, defendant can be charged at all. The issue before us turns on whether a social media post made by defendant can constitute a "true threat." We affirm.

## I. FACTUAL BACKGROUND

Defendant was a student at Lake Superior State University (LSSU), which has a unique policy that allows students to bring weapons onto campus if the weapons are immediately registered and stored with the public safety office. On August 22, 2019, defendant posted an image to his "story" on Snapchat—a social media platform that allows users to send pictures, with or without text, that can be viewed by the user's registered "friends" for 24 hours before the image disappears. Defendant posted an image depicting an AR-15 semi-automatic rifle with an attached bayonet, along with text stating: "Takin this bad boy up, this outta make the snowflakes melt, aye? And I mean snowflakes as in snow [winky face emoji]." Two LSSU students saw the post and alerted public safety. Both students expressed the belief that the word "snowflakes" referred to

---

[1] *People v Gerhard*, unpublished order of the Court of Appeals, entered November 19, 2020 (Docket No. 354369).

Democrats or liberals, which defendant later confirmed was accurate. One student felt that the post was inappropriate, although not threatening, but the second student testified that the text made her believe that defendant intended to use the gun and shoot liberal students. Defendant reported that he took the post down after he learned that it could be interpreted as a threat.

Defendant arrived to campus the following day and checked in his AR-15 rifle with public safety at approximately 8:00 a.m. Two police officers questioned defendant about the post in his dormitory room later that afternoon. Defendant confirmed that "bringing this bad boy up" referred to his bringing the AR-15 to campus, and that "snowflakes" referred to Democrats. However, defendant stated that by "melt" he meant that he wanted to make the Democrats' "minds melt" when they found out that he was bringing a gun to school. Defendant was arrested the following day and charged with making a threat of terrorism pursuant to MCL 750.543m.

At the preliminary examination, defense counsel argued that the charges were a violation of defendant's rights under the First Amendment, that the anti-terrorism statute was vague and overbroad, and that the statute did not apply because defendant's Snapchat post was not a threat of terrorism. The district court disagreed, holding that MCL 750.543m had been interpreted by higher courts as constitutionally valid, and the question of whether defendant's statement constituted a true threat was a question of fact for the jury. The district court found probable cause to believe that the elements of MCL 750.543m had been met, and it bound defendant over. Defendant filed a motion to quash the charge, arguing that the First Amendment protected his speech and that the district court therefore abused its discretion by binding defendant over. The circuit court disagreed and denied defendant's motion.

## II. STANDARDS OF REVIEW

"A district court magistrate's decision to bind over a defendant and a trial court's decision on a motion to quash an information are reviewed for an abuse of discretion." *People v Dowdy*, 489 Mich 373, 379; 802 NW2d 239 (2011). A trial court abuses its discretion by choosing an outcome that falls outside the range of reasonable and principled outcomes. *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003). "A trial court necessarily abuses its discretion when it makes an error of law." *People v Duncan*, 494 Mich 713, 723; 835 NW2d 399 (2013). "Whether conduct falls within the scope of a penal statute is a question of statutory interpretation," which we review de novo. *People v Flick*, 487 Mich 1, 9; 790 NW2d 295 (2010). "Questions involving the constitutionality of a statute are also reviewed de novo." *People v McKinley*, 496 Mich 410, 415; 852 NW2d 770 (2014).

## III. CONSTITUTIONALITY OF MCL 750.543m

Defendant first asserts that MCL 750.543m is unconstitutional. We disagree.

Defendant was charged with making a threat of terrorism under MCL 750.543m of the Michigan Anti-Terrorism Act, MCL 750.543a *et seq*. MCL 750.543m provides:

(1) A person is guilty of making a terrorist threat or of making a false report of terrorism if the person does either of the following:

(a) Threatens to commit an act of terrorism and communicates the threat to any other person.

(b) Knowingly makes a false report of an act of terrorism and communicates the false report to any other person, knowing the report is false.

(2) It is not a defense to a prosecution under this section that the defendant did not have the intent or capability of committing the act of terrorism.

(3) A person who violates this section is guilty of a felony punishable by imprisonment for not more than 20 years or a fine of not more than $20,000.00, or both.

MCL 750.543b(a) defines an "act of terrorism" as a

willful and deliberate act that is all of the following:

(*i*) An act that would be a violent felony under the laws of this state, whether or not committed in this state.

(*ii*) An act that the person knows or has reason to know is dangerous to human life.

(*iii*) An act that is intended to intimidate or coerce a civilian population or influence or affect the conduct of government or a unit of government through intimidation or coercion.

MCL 750.543z provides: "Notwithstanding any provision in this chapter, a prosecuting agency shall not prosecute any person or seize any property for conduct presumptively protected by the first amendment to the constitution of the United States in a manner that violates any constitutional provision."

Defendant properly recognizes that this Court has already held MCL 750.543m to be constitutional, albeit with some clarification. In *People v Osantowski*, 274 Mich App 593, 601-605; 736 NW2d 289 (2007) (*Osantowski I*), rev'd in part on other grounds 481 Mich 103 (2008) (*Osantowski II*), this Court explained that the Legislature's use of the word "threat" was meant as a reference to what the United States Supreme Court has defined as "true threats," which are not constitutionally protected speech. A true threat "encompass[es] those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." *Virginia v Black*, 538 US 343, 359; 123 S Ct 1536; 155 L Ed 2d 535 (2003). This interpretation was "further bolstered by the existence of MCL 750.543z," which prohibits prosecution for presumptively constitutional speech. *Osantowski I*, 274 Mich App at 603-604.

Defendant contends that *Osantowski I* was wrongly decided and an exercise in judicial legislation. We disagree. The First Amendment, applicable to the States through the Fourteenth Amendment, provides that the government "shall make no law . . . abridging the freedom of speech." US Const, Am I. See also *Black*, 538 US at 358. "If there is a bedrock principle

underlying the First Amendment, it is that that the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable." *Texas v Johnson*, 491 US 397, 414; 109 S Ct 2533; 105 L Ed 2d 342 (1989). Therefore, statutes that criminalize speech "must be interpreted with the commands of the First Amendment clearly in mind." *Watts v United States*, 394 US 705, 707; 89 S Ct 1399; 22 L Ed 2d 664 (1969). "The protections afforded by the First Amendment, however, are not absolute, and we have long recognized that the government may regulate certain categories of expression consistent with the Constitution." *Black*, 538 US at 358. One of those categories is "true threats." *Id*. at 359-360. Furthermore, "a presumption exists that a statute is constitutionally sound, and this Court will construe it as such unless its unconstitutionality is clearly apparent." *People v Newton*, 257 Mich App 61, 65; 665 NW2d 504 (2003) (quotation marks and citation omitted).

We decline to revisit *Osantowski I*. See MCR 7.215(J). In any event, we are unpersuaded that doing so would be warranted. Our clarification in *Osantowski I*, 274 Mich App at 603, that MCL 750.543m applies only to "true threats" was a reasonable and supported interpretation of the existing language of the statute that rendered it consistent with the First Amendment and with MCL 750.543z. Further, because the definition of "act of terrorism" under MCL 750.543b(a) and the requirements of MCL 750.543m encompass the elements identified in the definition of a "true threat" expressed in *Black*, 538 US at 359-360, our interpretation in *Osantowski I* rendered MCL 750.543m constitutionally valid.

## IV. APPLICABILITY OF THE FIRST AMENDMENT

Defendant next argues that the First Amendment applies to this matter. We agree in part. As discussed, the First Amendment is applicable to the states and prohibits the states from punishing speech for being offensive or disagreeable. There is no doubt that defendant's charge arises out of "speech" that defendant made, so the First Amendment applies to this matter. Nevertheless, as also discussed, the First Amendment's protections are not infinite. The First Amendment permits some content-based restrictions in a handful of categories of speech, including "advocacy intended, and likely, to incite imminent lawless action; obscenity; defamation; speech integral to criminal conduct; so-called 'fighting words;' child pornography; fraud; true threats; and speech presenting some grave and imminent threat the government has the power to prevent, although a restriction under the last category is most difficult to sustain." *United States v Alvarez*, 567 US 709, 717; 132 S Ct 2537; 183 L Ed 2d 574 (2012). Therefore, although the First Amendment applies to this matter, its protections may not extend to the specific speech at issue.

## V. PRELIMINARY ASSESSMENT OF TRUE THREAT

Defendant argues that, even if MCL 750.543m is constitutional, the requirements of the First Amendment, *Osantowski I*, and MCL 750.543z require the district court to make an initial determination, as a prerequisite to prosecution, that defendant made a "true threat." We agree in part. He further argues that the lower courts erred as a matter of law by concluding that defendant was properly bound over for trial. We disagree.

"In a preliminary examination, a district court's function is to determine whether the evidence is sufficient to cause an individual marked by discreetness and caution to have a

reasonable belief that the defendant is guilty as charged." *People v Justice*, 454 Mich 334, 343; 562 NW2d 652 (1997). Importantly, the inquiry is not into actual guilt or innocence, and the requisite quantum of proof is far less than "beyond a reasonable doubt." *Id*. at 343-344. Rather, reasonable doubts or conflicts in the evidence must be reserved to the trier of fact. *People v Hill*, 433 Mich 464, 469; 446 NW2d 140 (1989). The only requirement is that "[t]here must be evidence on each element of the crime charged or evidence from which those elements may be inferred." *People v Doss*, 406 Mich 90, 101; 276 NW2d 9 (1979) (quotation omitted). The prosecutor must, therefore, provide some evidence that defendant held a "general intent to communicate a 'true threat.' " *Osantowski I*, 274 Mich App at 605. Nevertheless, it is typically "a question of fact for a jury to determine whether a statement constitutes a true threat." *Id*. As defendant concedes, a "true threat" does not turn on whether the speaker intends to carry out the threat, but on whether the speaker intends to communicate the threat. *Black*, 538 US 359-360.

Defendant is correct insofar as the district court was required to make a preliminary finding that there was some evidence that defendant intended to communicate a true threat when he made his Snapchat post. However, defendant further argues that the district court was obligated to make an initial determination as a matter of law whether his speech constituted a true threat. Defendant is incorrect. Defendant observes that "[w]hen facts are found that establish the violation of a statute, the protection against conviction afforded by the First Amendment is a matter of law." *Dennis v United States*, 341 US 494, 513; 71 S Ct 857; 95 L Ed 1137 (1951). However, defendant overlooks that whether his speech constituted a true threat is itself a question of fact; and if the trier of fact were to conclude that defendant did not make a true threat, it is already established as a matter of law that he could not be guilty of making a threat of terrorism. Instead, defendant would put the cart before the horse and eliminate the protection of a jury evaluating whether particular speech constituted a true threat.

Although not binding upon us, we find persuasive that the United States federal courts have generally agreed. See *Abela v General Motors Corp*, 469 Mich 603, 607; 677 NW2d 325 (2004). In *United States v Baker*, 890 F Supp 1375, 1385 (ED Mich, 1995), the District Court held that whether a speech constituted a true threat was a question for the jury, unless the speech could not possibly constitute a true threat. This is consistent with the purpose of a preliminary examination to ensure that there is some evidence that the speech could be a true threat. The Tenth Circuit explained that it is a question of law whether a reasonable jury could find a statement to be a true threat, but whether the speech actually is a true threat would generally be a question for the jury. *United States v Stevens*, 881 F 3d 1249, 1252 (CA 10, 2018). The Second Circuit held that whether the First Amendment applies to a statute is a question of law for the court, *United States v Kelner*, 534 F 2d 1020, 1028 (CA 2, 1976), but unless the trial court finds as a matter of law that particular speech could not be a true threat, whether the speech is a true threat "is a question generally best left to a jury." *United States v Malik*, 16 F 3d 45, 51 (CA 2, 1994). The Third Circuit likewise explained that the trier of fact should generally decide whether a speech is a true threat, although the trial court is empowered to determine that the speech is so obviously not a threat that a charge should be dismissed as a matter of law. *United States v Stock*, 728 F 3d 287, 297-298 (CA 3, 2013). Several other circuits have also held that whether a particular speech constitutes a true threat is not a question of law for the court, but a question of fact for the jury. *Alexander v United States*, 418 F 2d 1203, 1206 (CA DC, 1969); *Feminist Majority Foundation v Hurley*, 911 F 3d 674, 692 (CA 4, 2018); *United States v Daughenbaugh*, 49 F 3d 171, 173-174 (CA 5, 1995); *Melugin v Hames*, 38 F 3d 1478, 1485 (CA 9, 1994).

The clear conclusion is that the preliminary examination for a charge of making a terrorist threat under MCL 750.543m should include consideration by the district court of whether the speech at issue could not possibly be considered a true threat. However, defendant is incorrect in asserting that the district court should decide as a matter of law whether it actually is a true threat. The district court properly carried out its duty by determining that the Snapchat post could constitute a true threat. The circuit court likewise properly concluded that although defendant had several "very good arguments" for why a jury should find him not guilty at trial, the bindover was proper because the post could be a true threat.

## VI. PROBABLE CAUSE

Defendant finally argues that the district court erred in finding probable cause to bind him over for trial, and the circuit court erred in failing to quash the charge. We disagree.

We initially note that the student who reported feeling threatened by defendant's post was apparently not an intended recipient of the post. As a general matter, a person "may not be punished because [he or she] negligently overlooked the possibility that someone else would show [a person not intended as a recipient] the Snapchat contents." *In re JP*, 330 Mich App 1, 18-19; 944 NW2d 422 (2019). However, the evidence at the preliminary examination indicated[2] that defendant had shared his Snapchat post with a large group of students, many of whom did not even know each other, and the student who felt threatened did not see the post only because she had intentionally removed herself from that group following an earlier disagreement with defendant. Furthermore, the post was widely shared on campus. This is clearly not a situation in which a person shares a private post with a limited number of known associates, only to discover that one of those associates breached his trust by sharing it further. Rather, defendant clearly intended his post to be essentially public. There is no evidence that the post was made accidentally, or that defendant was unaware of its contents or its audience. The evidence establishes that defendant intended to communicate the contents of the post with "any other person," including the people he regarded as "snowflakes."

To constitute a true threat, defendant must have made the communication "for the purpose of issuing a threat, or with knowledge that the communication will be viewed as a threat," rather than merely recklessly. *Elonis v United States*, 575 US 723, 740; 135 S Ct 2001; 192 L Ed 2d 1 (2015). Defendant appears to tacitly concede that his post was antisocial and ill-conceived, but argues that it was merely a reference to his expectation that bringing his gun to campus would cause the minds of "snowflakes" to "melt." As the circuit court observed, a jury could choose to believe that argument, and nothing in this opinion should be taken as foreclosing defendant from making such an argument at trial. However, at the preliminary examination stage of proceedings, the question is whether it is impossible for a statement to constitute a true threat, not whether it is possible for the trier of fact to deem it not a true threat. We conclude that the lower courts both properly found the matter to be a question for the jury.

---

[2] Evidence produced at trial may differ, but as discussed, the question at this stage of proceedings is whether there is some evidence of each element of the charged offense, not whether a defendant is actually guilty of the charged offense.

The meaning of a particular speech must be considered in its context. *Watts*, 394 US at 708. This may require consideration of current events and popular culture. *People v Byczek*, ___ Mich App ___, ___; ___ NW2d ___ (2021) (Docket No. 350341), slip op at p 8. Defendant argues that bringing guns to campus was not noteworthy; it is therefore incongruous that he would expect bringing a gun to campus to even raise an eyebrow, let alone "melt the brains" of people of a particular political orientation. Defendant also notes that guns are often brought to campus "for activities connected to hunting, sport shooting, outdoor firing ranges, and more." However, in addition to considering the wider social context, affixing a bayonet drastically changes the apparent context: bayonets are fundamentally used for hand-to-hand combat. See *Merriam-Webster's Collegiate Dictionary* (11th ed). The bayonet affixed to defendant's gun therefore implies that its intended use is against humans, not game animals or paper targets. The metaphor of "mak[ing] the snowflakes melt" is more consistent with placing "snowflakes" in fear, or possibly even killing them, than with causing them offense—especially if bringing guns to campus was otherwise not extraordinary. Conversely, school and other mass shootings currently receive significant media attention. Consequently, social media posts referencing guns, schools, and intentionally-obfuscated references to any kind of implied ensuing harm will necessarily be considered in light of that media attention. We note that both students who testified, including the student who did not feel threatened, indicated a belief that other students on campus might feel targeted or intimidated by the post.

When all of the above concerns are considered together and in context, there was ample basis for the district court to find probable cause that defendant knew, at the time he made his Snapchat post, that recipients who fell into the category of persons he considered "snowflakes" would receive and feel threatened by the post.[3]

## VII. CONCLUSION

To the extent defendant argues that MCL 750.543m is unconstitutional, we disagree. To the extent defendant argues that the facts failed to establish that he made a true threat for purposes of whether the speech in his Snapchat post was protected by the First Amendment, we again disagree, but his arguments are appropriate for consideration by the jury. The district court properly bound defendant over for trial. Affirmed.

/s/ Amy Ronayne Krause
/s/ Kathleen Jansen
/s/ Michael J. Kelly

---

[3] Defendant does not specifically challenge whether he threatened an "act of terrorism" as defined by MCL 750.543b(a), but rather only whether his speech constituted a "true threat" for First Amendment purposes. This Court's grant of leave to appeal was limited to the issues raised in defendant's application for leave, which likewise addressed his First Amendment challenge but did not specifically challenge whether the elements of MCL 750.543b(a) were sufficiently established. We therefore limit our analysis to defendant's First Amendment challenge.