**Zedekiah SUGGS, Appellant,**

v.

**UNITED STATES of America,
Appellee.**

No. 20463.

United States Court of Appeals
District of Columbia Circuit.

Argued May 8, 1968.

Decided Jan. 8, 1969.

---

Mr. Thomas Hale Boggs, Jr., Washington, D. C., with whom Mr. J. Gordon Arbuckle (both appointed by this court) was on the brief, for appellant.

Mr. James E. Kelley, Jr., Asst. U. S. Atty., with whom Messrs. David G.

Bress, U. S. Atty., Frank Q. Nebeker and Seymour Glanzer, Asst. U. S. Attys., were on the brief, for appellee. Mr. John G. Gill, Special Asst. U. S. Atty., also entered an appearance for appellee.

Before BAZELON, Chief Judge, and WILBUR K. MILLER, Senior Circuit Judge, and BURGER, Circuit Judge.

PER CURIAM:

This is an appeal from convictions for assault, assault with a dangerous weapon and for robbery. The evidence was that Appellant boarded a taxi cab, held a knife to the driver's throat and said "This is it." Appellant did not take the taxi driver's money but after Appellant's departure other property wrapped in a handkerchief was missing. A woman observed the assault and robbery, and called for help; a passerby, one Lawrence, responded and assisted the taxi driver in repelling the attacker. Both the driver and Lawrence suffered knife cuts. Appellant then fled the cab and the driver followed him. Meanwhile an observer had called the police who apprehended Appellant.

The witness Lawrence testified Appellant was searching the taxi driver's pocket. The arresting officer apprehended Appellant two blocks from the place of the attack and Appellant was immediately identified by the victim. Appellant had a small bottle of whiskey in his hand when arrested and he made no resistance and made no statement. The officer searched Appellant and found a knife and the cab driver's false teeth wrapped in a handkerchief and they were promptly identified by the cab driver. At the police station Appellant answered routine questions coherently during the booking process.[1]

---

1. The dissent describes the events in a truncated form which hardly reflects what really took place. The record contains a somewhat less palatable sequence of the events than the dissent suggests, as Judge Danaher pointed out when Suggs was lately before this Court. The facts are that Suggs, a passenger in the rear seat of a taxicab, directed the driver, Snead, to "Stop here." Suggs then reached forward, placed one arm around Snead's head, pulled it back, placed a knife at Snead's throat, and said, "This is it."

A Mrs. Thomas, sweeping her sidewalk a few feet away, saw the episode, screamed and ran to her door, telling her husband to call the police. One Joseph Lawrence

Appellant testified that preceding the time of the offenses charged he had been drinking gin with friends and had no memory of those events or of the period after he left a tavern before noon and until he awakened in the police station. His counsel asked if he had numerous previous arrests for drinking and he said that he had.

Before trial Appellant had been committed to a mental hospital for examination and found to be competent to stand trial and subject to no mental illness at the time of the alleged offense. Defense counsel interrogated Appellant as to his health and drinking habits and when challenged as to whether he was tendering a claim of insanity he answered, " * * * yes. I guess you would say I am on this basis. He's insisting he wants to testify as to the fact that he is you might say, a chronic alcoholic. * * * " He also asserted that Appellant claimed he did not know what he was doing when he became drunk and that he was drunk at the time of the incidents covered by the charge. The District Judge advised that he would allow wide latitude in allowing evidence on this claim. In his testimony Appellant referred to various friends he had been

drinking with just prior to the robbery but he produced none as witnesses.

At the close of the evidence the prosecutor inquired whether he could excuse a psychiatrist he had waiting and the Judge stated that at that stage Appellant had not introduced "some evidence to raise the issue of criminal responsibility." Defense counsel made no point of this but asked if a missing witness instruction would be given and the Judge said he would not do so.[2] The prosecutor asked for and was granted an instruction on recently stolen property and this was given with no objection. When the Judge instructed the jury as to the elements of robbery he advised the jury it must find that Appellant "took the property unlawfully and with intent to convert it permanently to his own use. * * * " On the issue of intoxication the Judge instructed that it was a defense to robbery if Appellant was too drunk to form an intent to rob or steal. Counsel for the defense expressed satisfaction with the charge.

Appellant now attacks the charge as defective on the issue of intoxication and argued that under the "plain error" rule the District Judge should have, *sua sponte*, ordered that defense counsel

was working on his car close to the cab and was attracted by the screaming of Mrs. Thomas. He ran across the street but, fearing Suggs "might make a mistake and actually cut [Snead's] throat," he first tried to persuade Suggs to stop. The latter kept his knife at Snead's throat and, as Lawrence saw it, "seemed to have been searching [Snead's] breast pocket." Lawrence finally "took a chance" and seized Suggs hand which was holding the knife. Lawrence then was severely cut by Suggs requiring a skin graft and hospital treatment. Snead was cut by Suggs on his chin and hand. Suggs left the cab after Lawrence's intervention and was followed by Snead.

Meanwhile Officer Washington had responded to the police alert. As the officer approached Suggs, the latter was taking a drink from a small bottle. Suggs was placed under arrest and the officer recovered from him a three-inch knife. Washington testified that when booking Suggs he made out a "line-up sheet" dur-

ing which Suggs coherently answered all questions. *See* Suggs v. United States, 129 U.S.App.D.C. 133, 141, 391 F.2d 971, 979 (1968) (Danaher, J., dissenting).

That "appellant took the cabbie's false teeth and left his real money", as Judge Bazelon describes it, does not remotely suggest that Appellant was unaware of what he was doing. He took an object which could have been rolled bills or a billfold which cab drivers customarily carry in a breast pocket. Only later did it develop that his loot turned out—several hours later—to be false teeth. It can reasonably be assumed that this episode, during which Appellant wounded both the cabbie and his rescuer, was not regarded by them—or the jury—as a schoolboy prank.

2. The Judge said "I am going to assume in light of the record that you have made an attempt and he [the 'witness'] was not peculiarly available to your people."

present evidence on Appellant's compulsive drinking. Appellant claims that it was error for the District Court to rely on the report of St. Elizabeths Hospital as to competency to stand trial and on his mental status as of the time of the crime charged. Appellant also contends the District Judge should have *sua sponte* precluded impeachment by showing of former convictions; that Appellant's testimony that he had no recollection of the events of the time in question made a fair trial impossible; that the evidence compelled a verdict of acquittal; that trial counsel was ineffective.

For the most part the claims raised on appeal do not merit any comment.[3]

■ The evidence on Appellant's condition at the time of arrest and his prior alcoholic tendencies was sketchy at best. Neither the victims nor the other eye witnesses observed signs of drunkenness; the arresting officer observed Appellant had a bottle of whiskey when he was arrested but testified that Appellant answered coherently all routine questions for booking. The pre-trial psychiatric medical examination was negative and there was no evidence of any kind which would have warranted the Judge to take the actions which Appellant now urges should have been taken. That contention is totally without basis or warrant on this record.

■ The claim that the court should have *sua sponte* excluded impeachment by prior convictions fails to take into account that Appellant opened a line of inquiry into former arrests to bolster his claim to exculpation because of intoxication. Government objection to showing such arrests was countered by defense contentions that it was essential to the theory of the defense. The court allowed it as relevant to the issue of specific intent and instructed the jury to that effect.[4] Appellant made no request for exclusion of impeachment by prior convictions and failed to advance reasons for that course as required under Luck v. United States, 121 U.S.App.D.C. 151, 348 F.2d 763 (1965), and Gordon v. United States, 127 U.S.App.D.C. 343, 383 F. 2d 936 (1967), cert. denied, 390 U.S. 1029, 88 S.Ct. 1421, 20 L.Ed.2d 287 (1968); indeed when Appellant was questioned directly by the Judge he made clear without any reservation that he wanted to testify.

■ The claim of ineffective assistance of counsel is one to be evaluated both by reference to specific omissions or errors of counsel and by a consideration of the entire record. Our examination leads us to comment at the outset that this is a claim which must be responsibly considered before it is urged on appeal; it is not a charge to be made lightly even though appellate counsel's duty may require it in a given case. In this case a review of the record satisfies us that no such charge against trial—or

3. This court previously appointed counsel to represent Appellant on this appeal and that lawyer moved to withdraw on the ground that the record presented no non-frivolous questions. *See* Suggs v. United States, 129 U.S.App.D.C. 133, 391 F.2d 971 (1968).

4. I will first recite to you by way of repetition that even if you should find this man was intoxicated to the degree which I am going to describe to you, it would not be a defense to any count other than Count 1 for the reason that Count 1 is the only criminal offense here charged which carries a specific intent, namely the intent to steal.

Now, as to the intoxication: The Court instructs you as a matter of law that voluntary intoxication neither excuses nor mitigates a crime. However, in the case of robbery, it embraces a specific intent, namely, an intent to steal.

The question of intoxication of the accused at the time of the offense of robbery, therefore, becomes an important matter of consideration in ascertaining whether it was done with a criminal intent. That the accused may have been drunk in the ordinary sense of that word is not sufficient. He must have been so drunk as to be incapable of forming an intent to rob or to steal. That is to say, incapable of consciousness that he is committing a crime.

appellate counsel who withdrew—was warranted.[5]

■■ The dissenting opinion argues that the jury instructions were so confusing as to deny Appellant a fair trial. Appellant, however, claimed only that the jury failed to follow the instructions and that the instruction on recently stolen property "perhaps" was deficient. This is not the claim the dissent relies on. As to the dissenting position that the instruction on intent was deficient, we note that the instruction stated that an essential element of robbery was that Appellant took property "unlawfully and with the intent to convert it permanently to his own use" and then that the specific intent to steal necessary for robbery could not be present if Appellant were too intoxicated to form it. Immediately thereafter, the jury was told that they might, but were not required to, infer that Appellant was guilty of robbery if he *knowingly* had in his possession without adequate explanation property recently taken from the complainant. Appellant's trial counsel did not object to these instructions and, therefore, any claim pressed on appeal in this regard must constitute "plain error" to be a predicate for reversal. FED.R.CRIM.P. 52(b). It is not error, plain or otherwise.

We fail to grasp how the jury could have been confused by these instructions. When told that they might infer robbery from recent, unexplained possession, the jurors had just been told that an essential component of robbery was a specific intent to steal and that such specific intent could be negated by drunkenness. The several instructions, uttered together, must, of course, be read together. The last instruction, even standing by itself, does not reasonably lend itself to a construction which would obviate the learning which had immediately preceded it. Not only did the jury have the benefit of *all* the instructions, but there was an abundance of evidence from which they could have concluded that Appellant was not so intoxicated as to require a finding of incapacity to form the specific intent.

It is not difficult of course to isolate an individual sentence in a series of jury instructions thereby highlighting its spe-

---

5. We are constrained to note that Appellant's brief contains the following statement:

> Appellant further *believes* that the daily taxicab manifest of the complaining witness, Mr. Snead, *could have* furnished relevant evidence in the case *in that Appellant has been told* that there was another passenger in the cab at the time when he was picked up and further that the address initially given to Mr. Snead was Appellant's home address. It is submitted that *if it can be shown* that Appellant initially gave his home address, rather than 6th & D Street, N.E. (at the corner about four blocks from his home) this factor would tend to negative the belief that he could have formed the specific intent for robbery since a reasonable man would not be expected to give his correct address while intending to rob the cab driver. Further *if it can be shown* from the daily manifest that an additional passenger was present in the cab at the time Appellant was picked up, this would tend to impeach the complaining witness' testimony and *also might lead* to the development of *further exculpatory evidence* in the case. Accordingly,

> Appellant suggests that failure of the trial counsel to subpoena available witnesses and the cab driver's daily manifest contributed substantially to the unfairness of the trial court proceedings in light of Appellant's inability to remember the events alleged in the indictment. (Emphasis added.)

Brief for Appellant at 44–45. This is not evidence drawn from the record; it is not proper argument in this court; it is matter outside the record and at best is speculation. It is inappropriate to present as "argument" matters outside the record, which counsel asserts Appellant has been told. Rule 28 of the Federal Rules of Appellate Procedure. *See, e. g.,* Morgan v. United States, 380 F.2d 686, 700 (9th Cir. 1967); Bunn v. United States, 369 F.2d 809 (5th Cir. 1966). If this claim indeed had any validity or factual basis it was incumbent on present counsel—as soon as it was thought appropriate to mention it in a brief—to seek leave of this court to present affidavits to the District Court demonstrating that such evidence was in fact available and why it would support a claim for a new trial on newly discovered evidence.

cial meaning and obscuring the collective impact of the jury instructions taken as a whole. Such an approach, however, tends to focus on the trees and misses the forest. Nor can we accept the notion that jurors give instructions the super-critical scrutiny which an appellate court can provide. We are satisfied that considered as a whole, rather than dealing with parts taken out of context, the charge abundantly covered the essential elements.

Affirmed.

BAZELON, Chief Judge (dissenting):

Appellant was convicted of robbery and assault with a dangerous weapon. He allegedly held up a cab driver at the point of a knife. The cabbie offered his money, but appellant took only some false teeth wrapped in a handkerchief. A passerby came to the rescue and was injured, as was the cabbie. Appellant then left the cab, walked across the street, fell, got up, and continued to walk for three or four blocks. The cab followed him at a safe distance. When the police arrested appellant a few minutes later he was drinking from a whiskey bottle.

Appellant's major defense at trial was that he was too intoxicated to have had the specific intent required for robbery. He now argues that the evidence was such that the jury had to have a reasonable doubt on this score. I agree that the evidence concerning appellant's intoxication was not sufficient to compel a jury to find that he lacked the requisite specific intent.

Appellant argues further, however, that the trial court's instructions with regard to specific intent and possession of stolen goods were so confusing as to deny him a fair trial. Even a cursory examination of the instruction, which is set out in pertinent part in the margin,[1] demonstrates that appellant's objection is sound.

The trial court first instructed the jury that to convict the defendant of robbery the government was required to prove beyond a reasonable doubt that, *inter alia*, the defendant had a specific intent to rob. But intoxication, he stated, could negate the presence of a specific intent. Then, in the next breath he told the jury there was a "further principle" that would permit them to infer the defendant's guilt if he "knowingly had in his possession any of the property recently taken from the complainant * * and failed to explain such possession. * * * " This last statement, standing alone, is clearly erroneous. The jury could not infer defendant's guilt from unexplained possession unless they first found that he was not too drunk to form the requisite specific intent.[2]

The Government, however, asserts that the instructions "coming together, must be read together." I agree. But as the jury heard them the instructions seem to say that unexplained possession obviates the need to find a specific intent to rob.

1. "Now, as to intoxication: The Court instructs you as a matter of law that voluntary intoxication neither excuses nor mitigates a crime. However, in the case of robbery, it embraces a specific intent, namely, an intent to steal.

The question of intoxication of the accused at the time of the offense of robbery, therefore, becomes an important matter of consideration in ascertaining whether it was done with a criminal intent. That the accused may have been drunk in the ordinary sense of that word is not sufficient. He must have been so drunk as to be incapable of forming an intent to rob or to steal. That is to say, incapable of consciousness that he is committing a crime.

There is still a further principle which you have for your consideration in connection with Count 1, and that is the principle of law known as possession of recently stolen goods. And in that regard, you are instructed that if you should find that this defendant knowingly had in his possession any of the property recently taken from the complainant in this case, and that the defendant has failed to explain such possession to your satisfaction, then you may—but you are not required to—infer therefrom the guilt of such defendant on the charge."

2. *Cf.* Vaughn and Worrell v. United States, Nos. 21067–68 (CADC Feb. 9, 1968).

The incorrect statement concerning unexplained possession was the last thing the jury heard in connection with the robbery charge, and they were told that it represented a "further principle" to the rule that intoxication is a defense. There was no other explanation whatever of the relationship between these two principles. A layman would reasonably infer that the unexplained possession instruction supersedes the instruction on intoxication.

Inclusion of the phrase *"knowingly had in his possession"* in the unexplained possession instruction does not remove the error. Whatever other crime it may constitute, knowledge of illegal possession acquired *after* a wrongful taking cannot supply the requisite specific intent for a conviction for robbery. It might be thought, however, that the error is harmless because a jury finding of knowing possession after the offense is the substantial equivalent of a finding that appellant was capable of forming a specific intent to rob shortly before. But the jury were not told they still had to find a specific intent. Instead they were led to believe that knowing unexplained possession was a "further principle" to the previous instructions, permitting conviction for robbery in the absence of specific intent. The court made no point of emphasizing that knowledge was an essential precondition to an inference of guilt. And even if the jury happened to seize upon the word "knowingly," only an alert legal mind would have been confident that, in law, a man could be too drunk to "knowingly" possess. Thus, on the assumptions most favorable to the instructions, there remains a real danger that the jury thought unexplained possession negated a defense of drunkenness.

Defense counsel did not object to the instructions below. Therefore we may entertain an objection to them now only if they contain "plain errors or defects affecting substantial rights." [3] I am satisfied that they do. In reviewing an error for the first time on appeal, the crucial consideration must be the overall impact of the error on the fairness of the trial, not trial counsel's failure to object.[4] Here, as a result of the defective instructions, it is highly probable that the jury never even considered appellant's principal, and apparently substantial,[5] defense. Accordingly, I would reverse the conviction for robbery.[6]

---

3. F.R.Crim.P. 52(b).

4. Harris v. United States, 131 U.S.App. D.C. 105, 402 F.2d 656 (decided Sept. 17, 1968).

5. In the context of the other evidence of intoxication, the fact that appellant took the cabbie's false teeth and left his real money suggests that appellant's defense presented at least a substantial issue of fact. One may, of course, speculate that appellant mistook the lower denture wrapped in a handkerchief for a roll of bills (or even a billfold) wrapped in a handkerchief; or that he suspected there was a hidden compartment containing drugs in what he knew to be a denture; or perhaps even that he had always wanted a lower denture—any denture. On the strength of such hypotheses, a *properly* instructed jury could have concluded that appellant was sober. But these speculations were for such a jury, not for an appellate court, to resolve. Borum v. United States, 127 U.S.App.D.C. 48, 52–54, 380 F.2d 595, 599–601 (1967) (dissenting opinion of Burger, J.).

6. Of course, as the court's opinion indicates, appellate arguments ought not to rest on matter outside the record. However, I do not regard reference to such matter in brief or argument as necessarily offensive—so long as its source is clearly identified, as it was here. See the quoted passage from the brief of court-appointed counsel in note 4 of the court's opinion. We could not be and were not misled or contaminated. That off-the-record information may sometimes be useful is illustrated by the frequency with which appellate judges themselves seek such information at oral argument.