**UNITED STATES of America**

v.

**Franklin D. NORRIS, Jr., Appellant.**

**No. 88–3048.**

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 16, 1989.

Decided May 9, 1989.

Allen M. Lenchek, Washington, D.C. (appointed by the court), for appellant.

Donald B. Nicholson, Atty., Dept. of Justice, with whom Jay B. Stephens, U.S. Atty., Michael W. Farrell, and Helen M. Bollwerk, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before ROBINSON, EDWARDS, and SENTELLE, Circuit Judges.

Opinion for the Court filed by Circuit Judge SENTELLE.

SENTELLE, Circuit Judge:

Appellant Franklin D. Norris, Jr. ("appellant" or "Norris") appeals from his conviction on five counts of using communications facilities in connection with drug trafficking in violation of 21 U.S.C. § 843(b); one count of possessing with intent to distribute more than 500 grams of cocaine, 21 U.S.C. §§ 841(a), 841(b)(1)(B)(ii); and one count of carrying a firearm during the commission of a drug traffick scheme, 18 U.S.C. § 924(c)(1). He argues that the Court erred in not giving a missing witness instruction to the jury, in misstating the law of entrapment in its instructions, and in denying him a fair trial by its participation in cross-examination of the defendant. Concluding that none of the allegations of error is sufficiently meritorious to warrant reversal, we affirm.

## I. BACKGROUND

This is the odd criminal case in which there is virtually no dispute as to facts. The government's evidence shows that Norris engaged in several telephone conversations with Emile Manara, a Drug Enforcement Administration ("DEA") undercover agent, for the purpose of setting up a transaction to sell two kilograms of cocaine to the agent in exchange for $26,000. On October 7, 1987, when they met to consummate the deal, Manara and another agent arrested appellant and seized two kilograms of cocaine from his car and a pistol from his person. Norris contests none of this.

Norris claimed that he was entrapped into committing the offenses by Barbara Walters, a DEA informant. The government does not dispute the evidence offered by Norris in support of this defense. Norris's uncontradicted evidence was to the effect that Walters moved into the home of Norris and his mother in 1976 and was the lover of Norris's mother. She developed an "aunt-like" or "father-like" relationship with young Norris, guided him in school, counseled him in social and personal matters, and taught him to drive. In 1982, when Norris was home on leave from the military, Walters introduced him to cocaine. Over the course of the next few years, they indulged in the use of cocaine together.

In 1984, Walters became a paid informant of the DEA. She introduced acquaintances to DEA agents for the purpose of setting up controlled narcotics buys. Between October, 1984, and January, 1988, she was paid more than $30,000 by the DEA for her informant services. In September of 1987, Walters solicited Norris to obtain a sample of cocaine for a friend (agent Manara) who would be interested in purchasing a multi-kilogram quantity if he liked the sample. Prior to this time, Norris had dealt in cocaine, but never in multi-kilogram or even multi-ounce quantities. Norris told Walters that he could not produce such large quantities, but she assured him that she would give him time to work on it and set up a meeting between him and the "friend." After the meeting, Walters told Norris that her "friend" was satisfied with the sample and wanted six kilograms. Norris advised her that he could not obtain six kilos but agreed to obtain two for the still undisclosed undercover agent. The transactions then proceeded as established by the government's evidence.

At trial, in light of the undisputed evidence, the sole defense was based on the theory of entrapment. Neither party called Walters as a witness. After conviction and sentencing on all counts, and Norris's motion for a new trial was denied, he appealed, setting forth the three assignments of error described above.

## II. ANALYSIS

While none of the assignments of error warrant reversal, each occasions some brief discussion on our part.

### A. The Missing Witness Instruction

Appellant requested the District Judge to instruct the jury, with reference to Barbara Walters, that

> [i]f it was peculiarly within the power of either the prosecution or the defense to produce a witness who could have given material testimony on an issue in this case, you may infer, from the party's failure to call that witness to testify, that his or her testimony would have been unfavorable to the party to whom the witness was peculiarly available.

Defendant's Request for Instruction No. 2, *quoted in* Brief for Appellant at 9. The government objected, and the Court, after hearing arguments, did not instruct the jury on the missing witness inference appellant requested.

Norris urges that this was reversible error. He argues that the relationship between the DEA and its informant places Walters in the position of being peculiarly within the power of the government to produce and that, therefore, he is entitled to the missing witness instruction concerning informant Walters. He finds support in *Burgess v. United States*, 440 F.2d 226 (D.C.Cir.1970), in which Judge Fahy, considering the same question, found that the

informant was within the control of the government because he "participated in bringing appellant into conflict with the narcotic laws. Nothing indicates any break in the association." *Id.* at 232. While the government argues that Norris knew the name and address of the witness and could have subpoenaed her himself, the same situation prevailed in *Burgess,* and Judge Fahy went on to state "[w]hile it was quite proper for the Government to furnish defense counsel with such information as it could as to the whereabouts of the informer, this created no obligation on the defense to seek the witness by subpoena." *Id.*[1]

The government counters that the status of informant does not by itself create the sort of peculiarity of power to produce a witness that triggers the missing witness instruction. Indeed, in a more recent decision, we have held that "no automatic inference of exclusive government control arises from the fact that witnesses are acting as government informants." *United States v. Tarantino,* 846 F.2d 1384, 1404 (D.C.Cir.) (per curiam) (citations omitted), *cert. denied,* — U.S. ——, 109 S.Ct. 108, 102 L.Ed.2d 83 (1988).

We need not determine whether the present case is controlled by *Burgess* or *Tarantino* on the question of the "exclusive" or "peculiar" power to produce the witness. Exclusivity or peculiarity of power to produce is only one of two necessary predicates for entitlement to the missing witness instruction. As Judge Fahy noted in *Burgess,* "[w]hen the court is asked to give the instruction, then, a judgment is to be reached as to whether from all the circumstances an inference of unfavorable testimony from an absent witness is a natural and reasonable one." 440 F.2d at 234. We have similarly held on other occasions. *See, e.g., Morrison v. United States,* 365 F.2d 521, 524 (D.C.Cir.1966) ("The missing witness instruction is one within the sound judicial discretion of the trial judge who

must decide whether in all the circumstances shown it is reasonable for the jury to be permitted to draw an adverse inference from one party's failure to call a witness peculiarly available to him."). Thus, the instruction need not be given even if the missing witness is under the control of one of the parties as long as no inference of adverse testimony is justified. *See United States v. Bramble,* 680 F.2d 590 (9th Cir.) (quoting and adopting the above language from *Burgess* ), *cert. denied,* 459 U.S. 1072, 103 S.Ct. 493, 74 L.Ed.2d 635 (1982); *see also United States v. Busic,* 587 F.2d 577, 586 (3d Cir.1978) (inference warranted only when "testimony could be expected to favor" one party) (citing, *inter alia, Burgess* ), *rev'd on other grounds,* 446 U.S. 398, 100 S.Ct. 1747, 64 L.Ed.2d 381 (1980); *United States v. Torres,* 845 F.2d 1165, 1169 (2d Cir.1988). *Cf. Graves v. United States,* 150 U.S. 118, 121, 14 S.Ct. 40, 41, 37 L.Ed. 1021 (1893) (when unproduced testimony would "elucidate the transaction," presumption of unfavorable testimony arises).

In the present case, no such inference is warranted.

The logic underlying the missing witness rule is that where the party with peculiar or exclusive control of a witness fails to call that witness, there must be some reason for its failure. Where there are "other reasons why [s]he was not called," the failure of the party having the peculiar power to control the presence of the witness to put her on the stand "d[oes] not authorize an inference, supported by an instruction, that if [s]he testified [s]he would have done so unfavorably to the" party. *Burgess,* 440 F.2d at 234. That is the situation in the present case. The government had well established the facts upon which it relied. Agent Manara had fully elucidated the facts of the transactions in conversations between himself and Norris. Another DEA undercover agent, Freddie Ryans, testified to his presence at the arranged

---

1. In the quoted language, Judge Fahy wrote for himself and not the other members of his panel. However, a second member of the panel, Judge Robinson, fully concurred in the relevant parts of the quoted section. The third member, while concurring in the result, did not join in the reasoning applicable to this point.

buy and corroborated Manara's account. The government had presented as evidence tapes and transcripts of several conversations between Manara and Norris. Cross-examination of Manara and Ryans was not directed toward shaking the foundations of the evidentiary facts upon which the government relied. At the close of the government's evidence, there was no reason to expect the government to offer any further support for its well-established propositions. Appellant's evidence, including his own extended testimony, did not contradict the facts upon which the government relied to support the indictment. Thus there was no reason to expect the government to call Walters or any other witness in rebuttal, and no reason to assume that, if she had been called, her testimony would have been adverse to the government. As Judge Fahy wrote in *Burgess:* "There may have been other reasons why [s]he was not called. The Government may simply have thought it well enough to submit the case on the testimony of the agents, all of whom placed appellant at the scene they described, and to leave it to the jury to decide whether as thus submitted the proof, without more, was convincing enough." *Id.* at 234.

This case is similar to, although arguably stronger than, several instructive cases from other circuits. For example, in *United States v. Carr,* 584 F.2d 612 (2d Cir. 1978), *cert. denied,* 440 U.S. 935, 99 S.Ct. 1280, 59 L.Ed.2d 494 (1979), the Second Circuit held that a defendant was not entitled to a missing witness instruction based on the failure to call a local police officer who had arrested the defendant on parallel charges during the federal investigation, citing, *inter alia,* the fact that "his testimony would have been cumulative." *Id.* at 618. In *United States v. Jennings,* 724 F.2d 436 (5th Cir.), *cert. denied,* 467 U.S. 1227, 104 S.Ct. 2682, 81 L.Ed.2d 877 (1984), the Fifth Circuit held that "[a] missing witness instruction is not justified if it appears that the testimony of the witness who is not called would likely have been merely cumulative or corroborative." *Id.* at 446 (citations omitted). And, in *United States v. Mahone,* 537 F.2d 922 (7th Cir.),

*cert. denied,* 429 U.S. 1025, 97 S.Ct. 646, 50 L.Ed.2d 627 (1976), the Seventh Circuit held that because of the "uncertainty of whether [the missing witness's] testimony would have been cumulative and irrelevant," the district court committed no error by failing to give the requested missing witness instruction. *Id.* at 927. *See also United States v. Johnson,* 467 F.2d 804, 808 (1st Cir.1972), *cert. denied,* 410 U.S. 909, 93 S.Ct. 963, 35 L.Ed.2d 270 (1973).

Indeed, the facts of the present case make it an unusually strong one for not giving the missing witness instruction. The only logical reason for anyone to call Walters was on the inducement element of the entrapment defense. As we will discuss further in Part II–B of this opinion, the entrapment defense consists of two key elements: inducement to commit the crime by a government agent and a lack of predisposition toward the commission of the crime by the defendant. On the question of inducement in the present case, appellant testified at length about the role of Barbara Walters. The government left that portion of his testimony unchallenged and substantially untested even by cross-examination. The government's counter to appellant's entrapment defense centered on predisposition, evidenced by his knowledge of the drug trade, his admissions of prior dealings, his possession of drug paraphernalia, and such related items of evidence as his expensive rental of a car phone at a time when there was no other apparent business reason for such an expenditure. On these latter subjects, Barbara Walters would not be expected to possess special knowledge or testimony. Thus, the only reason why any party would be expected to call Walters would be for the purpose of corroborating or cumulating—not the government's evidence—but appellant's evidence on inducement, an essential element of his defense. Since the law is that the missing witness instruction is inappropriate where the evidence would be only corroborative or cumulative of the government's own case, *Brown v. United States,* 414 F.2d 1165, 1166–67 n. 2 (D.C.Cir.1969), how much less appropriate must it be where the

contested testimony would be only corroborative or cumulative of the defense's case? It simply strains all reason to argue that a defendant who has been able to hit the prosecution with his best shot in his own defense is entitled to create further evidence out of a lack of evidence because the government did not furnish him with another witness on the same subject. Particularly is this true where the exclusivity of control of the witness by the government is as questionable as in the present case. *See United States v. Tarantino*, 846 F.2d at 1404.

Thus, we find no merit in this assignment of error.

### B. *The Entrapment Instruction*

■ The District Judge instructed on the defense of entrapment twice, once in his principal charge and again at the request of the jury during deliberations.[2] Each time, he gave substantially the instructions approved by us in *United States v. Kelly*, 748 F.2d 691, 697–98 & n. 16 (D.C.Cir.1984), and *United States v. Burkley*, 591 F.2d 903, 912–16 & n. 18 (D.C.Cir.1978), *cert. denied*, 440 U.S. 966, 99 S.Ct. 1516, 59 L.Ed.2d 782 (1979). That instruction required the jury to find appellant not guilty on the basis of the entrapment defense if he was induced to commit the offenses charged (not merely given the opportunity) and had no predisposition to commit those offenses—that is, that he was not "ready and willing to commit crimes such as those alleged in the indictment whenever an opportunity was offered." Transcript ("Tr.") III at 125.

Both in the principal instructions and in the supplemental instructions during deliberations, the Judge included among the five pages of instructions a single sentence in which he misspoke himself: "There is *no* entrapment if he was induced and if he was *not* predisposed." Tr. III at 127; Tr. IV at 9 (emphasis added). We need not pause to consider whether the sentence was erroneous, the government concedes that it was. Obviously, the Judge meant to say something like "there *is* entrapment if the defendant was induced and was not predisposed to commit the offense." However, on neither occasion did the defense enter an objection. Rule 30 of the Federal Rules of Criminal Procedure states "[n]o party may assign as error any portion of the charge or omission therefrom unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which that party objects and the grounds of the objection." Fed.R. Crim.P. 30.

Having failed to comply with the requirement of Federal Rule of Criminal Procedure 30 by raising a contemporaneous objection, in order to prevail on this assignment appellant must demonstrate that "the jury instructions were plainly erroneous within the meaning of Fed.R.Crim.P. 52(b)." *United States v. Campbell*, 684 F.2d 141, 148 (D.C.Cir.1982).[3] Standing alone, the stray statement was erroneous. This, however, does not end our inquiry. *See United States v. Martin*, 475 F.2d 943, 947, 950 (D.C.Cir.1973) (holding erroneous statement of law harmless beyond reasonable doubt "[i]n view of instructions considered as a whole and the substantial evidence presented at trial"). The plain error exception only applies where absent reversal " 'a miscarriage of justice would otherwise result.' " *United States v. Baker*, 693 F.2d 183, 187 (D.C.Cir.1982) (quoting *United States v. Frady*, 456 U.S. 152, 163 & n. 14, 102 S.Ct. 1584, 1592 & n. 14, 71 L.Ed.2d 816 (1982)). In order to determine whether the Court's admittedly erroneous statement in an otherwise correct instruction resulted in a miscarriage of justice, we look for guidance to the numerous occasions on which we have examined errors in jury instructions.

The law in this and other circuits is well settled that when we test jury instructions, we examine the instruction in its entirety to

---

**2.** This instruction was identical in almost every respect to the charge originally given. *Compare* Tr. III at 123–27 *with* Tr. IV at 5–9.

**3.** Rule 52(b) provides that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Fed.R.Crim.P. 52(b).

determine whether any aspect of the charge had the "likelihood of misleading the jury to the extent that it is more probable than not that an improper verdict was rendered." *United States v. Thurman,* 417 F.2d 752, 753 (D.C.Cir.1969) (per curiam) (citations omitted), *cert. denied,* 397 U.S. 1026, 90 S.Ct. 1269, 25 L.Ed.2d 535 (1970). *See also Suggs v. United States,* 407 F.2d 1272, 1277 (D.C.Cir.1969) (to focus on the isolated sentence would "tend[ ] to focus on the trees and miss[ ] the forest"). We consider not only the language of the entire instruction, but also the arguments of counsel, and the evidence itself, *United States v. Lemire,* 720 F.2d 1327, 1339 (D.C. Cir.1983), *cert. denied,* 467 U.S. 1226, 104 S.Ct. 2678, 81 L.Ed.2d 874 (1984), in order to determine whether the jury was *substantially* swayed by the error. *See Kotteakos v. United States,* 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946); *Alexander v. United States,* 418 F.2d 1203, 1207 (D.C.Cir.1969). Our responsibility is to reverse the conviction unless we can say " 'with fair assurance, ... without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error.' " *Alexander,* 418 F.2d at 1207 (quoting *Kotteakos,* 328 U.S. at 765, 66 S.Ct. at 1248). That is, if we conclude that the error itself had substantial influence—or even if we have grave doubts on this question—the conviction cannot stand. *Kotteakos,* 328 U.S. at 765, 66 S.Ct. at 1248.

This case well illustrates the reason behind that requirement and the requirement of Rule 30 for contemporaneous objection. The Court's lengthy, detailed, and substantially accurate charge made plain to the jury the elements of the entrapment defense and the consequences of inducement and predisposition. The single inaccurate sentence in each of the two entrapment instructions was so minor, so dissonant, and so imbedded in an otherwise correct instruction consuming five pages of transcript that neither of the trained attorneys noted it sufficiently to call it to the Judge's attention—neither the defendant for objec-

tion nor the prosecution for protection of the record. Likely, they and the jury heard the single sentence—expressed as it was in the form of a double negative—in light of the balance of the instructions. In any event, examining the charge as a whole, we find that it was not "more probable than not that an improper verdict was rendered." *Thurman,* 417 F.2d at 753 (citation omitted). *See also United States v. Zabalaga,* 834 F.2d 1062, 1066–67 (D.C.Cir. 1987) (affirming conviction where erroneous portion of charge constituted "only a minor part of lengthy and clear instructions"); *Suggs,* 407 F.2d at 1277 (upholding conviction where "considered as a whole ... the charge abundantly covered the essential elements"); *United States v. Martin,* 475 F.2d 943 (D.C.Cir.1973) (harmless error beyond reasonable doubt).

Appellant contends that we are to find increased moment in the error in light of the jury's request for reinstruction on the entrapment defense. *See* Brief for Appellant at 11. Their request is, however, by no means surprising given that entrapment was, as the Court pointed out to the jury, the central issue in appellant's defense. *See* Tr. III at 123–24. To the extent that the error was compounded by its repetition, it was likewise washed out by the repetition of the overwhelmingly correct portion of the instruction.

We therefore grant no relief based on this assignment.

### C. *The Judge's Participation in Examination of Witnesses*

Finally, appellant contends that "the court prejudiced the defendant by repeatedly cross examining him, eliciting answers favorable to the prosecution, challenging the defendant's testimony, initiating new lines of questioning, impeaching the defendant's credibility, deriding him with sarcasm, and giving the jury the impression that he believed the defendant to be guilty." Brief for Appellant at 12. Appellant has provided numerous concrete examples of extensive participation by the Judge

in the examination of the defendant, perhaps more than we would normally desire. As appellant notes, we have held in many cases "the judge must remain 'a disinterested and objective participant in the proceedings,' and principles both fundamental and indestructible in our criminal law exhort him to hold to a minimum his questioning of witnesses in a jury trial." *United States v. Barbour*, 420 F.2d 1319, 1321 (D.C.Cir.1969) (quoting *Billeci v. United States*, 184 F.2d 394, 403 (D.C.Cir.1950); footnotes omitted). *See also* cases cited at *id.* n. 13. Appellant argues that the District Court's questioning of him in this case crossed the line drawn by *Barbour*.

Nonetheless we have also stated in the *Barbour* case and in other cases that "[a] trial judge is not a 'mere moderator'; his function extends to necessary assistance to 'the inexperienced laymen in the [jury] box in finding the truth in the confusing conflicts of contradictory evidence.'" *Id.* at 1320–21 (quoting *Billeci*, 184 F.2d at 402; footnotes and other citations omitted).

We have noted, by way of example, that the trial judge's "participation in the examination of witnesses may well be justified where the testimonial presentation promotes fuzziness, as where testimony is inarticulately or reluctantly given." *Id.* at 1321 (citing *Jackson v. United States*, 329 F.2d 893 (D.C.Cir.1964)).

A bit more recently, in *United States v. Liddy*, 509 F.2d 428 (D.C.Cir.1974) (*en banc*), *cert. denied*, 420 U.S. 911, 95 S.Ct. 833, 42 L.Ed.2d 842 (1975), we reiterated the requirement that a trial judge must not create "an appearance of partiality by continued intervention on the side of one of the parties or undermine[ ] the effective functioning of counsel through repeated interruption of the examination of witnesses." *Id.* at 438–39. But again, we noted that "[t]he precepts of fair trial and judicial objectivity do not require a judge to be inert. The trial judge is properly governed by the interest of justice and truth, and is not compelled to act as if he were merely presiding at a sporting match." *Id.* at 438.

Obviously, then, the decision as to whether a trial judge's participation in the examination of witnesses has gone beyond the bounds of an impartial officer directing the judicial process of truth seeking and invaded the role of an advocate, thereby biasing the process against the defendant, is one that we must make case by case. To make the decision in this, or in any other case, we are guided by the principles set forth above. Here, the questions of the Court generally concerned lines of inquiry opened by one or the other of trial counsel, which the Judge was further pursuing. For example, while appellant characterizes the Judge's interrogation of him on the subject of the drug price as impeachment, it, in fact, followed a confusing exchange between defense counsel and appellant and can properly be classified as clarification. *See* Tr. II at 109–11. Similarly, the Court's questions concerning the relationship between appellant and Walters only slightly extended the line pursued by the prosecution's attorney and opened up no new line of inquiry. *See* Tr. III at 58.

In viewing these and all other questions by the Judge, we must remember that our analysis must be a prospective one. "Before the answers were given by the witness[ ], [the trial j]udge ... had no way of knowing what the answers would be...." *United States v. Patterson*, 652 F.2d 1046, 1048 (D.C.Cir.), *cert. denied*, 454 U.S. 904, 102 S.Ct. 412, 70 L.Ed.2d 223 (1981). Given the prospectivity of the analysis and the leeway for the conduct of trial and the pursuit of truth necessarily afforded a trial judge, we find no reversible error in the Court's conduct of questioning in the present case. We nonetheless feel constrained to once again put forth the admonition that "[p]articularly when the questioning is designed to elicit answers favorable to the prosecution, 'it is far better for the trial judge to err on the side of [a]bstention from intervention in the case.'" *United States v. Green*, 429 F.2d 754, 760 (D.C.Cir.1970) (quoting *Blumberg v. United States*, 222 F.2d 496, 501 (5th Cir.1955)). We remind the district courts of Judge Learned Hand's remonstration

that "[p]rosecution and judgment are two quite separate functions in the administration of justice; they must not merge." *United States v. Marzano,* 149 F.2d 923, 926 (2d Cir.1945) (citations omitted). Here, however, we cannot find that the dangerous merger occurred.

### III. Conclusion

For the reasons set forth above, we find no prejudicial error and affirm the judgment of the District Court.