24 F.3d 1464
 306 U.S.App.D.C. 356
 NOTICE: D.C. Circuit Local Rule 11(c) states that unpublished orders, judgments, and explanatory memoranda may not be cited as precedents, but counsel may refer to unpublished dispositions when the binding or preclusive effect of the disposition, rather than its quality as precedent, is relevant.
UNITED STATES of America, Appellee,
v.
Darryl A. SPEIGHT, Appellant.
 No. 92-3035.
 United States Court of Appeals, District of Columbia Circuit.
 May 26, 1994.
 
 Before: EDWARDS, GINSBURG and HENDERSON, Circuit Judges.
 JUDGMENT
 PER CURIAM.
 
 
 1
 This case was heard on the record from the United States District Court for the District of Columbia and on the briefs and arguments by counsel. The court has accorded the arguments full consideration and determined the issues presented occasion no need for a published opinion. See D.C.Cir.Rule 36(b). For the reasons set out in the accompanying memorandum, it is
 
 
 2
 ORDERED that the judgment from which this appeal has been taken be affirmed.
 
 
 3
 The clerk is directed to withhold issuance of the mandate herein until seven days after disposition of any timely petition for rehearing. See D.C.Cir.Rule 41(a)(1).
 
 MEMORANDUM
 
 4
 The appellant, Darryl Speight, challenges his conviction of possessing cocaine base with intent to distribute. On appeal from a conviction, we must view the evidence in the light most favorable to the government, allowing it the benefit of all reasonable inferences that may be drawn from the evidence and permitting the jury to determine the weight and credibility of the evidence. United States v. Smith, 964 F.2d 1221, 1222 (D.C.Cir.1992); United States v. Butler, 924 F.2d 1124, 1126 (D.C.Cir.), cert. denied, 112 S.Ct. 205 (1991). So viewed the evidence reveals the following facts.
 
 
 5
 At about 10:00 p.m. on December 11, 1990, Speight, along with co-defendant James L. Wilson, sold a $20 "rock" of cocaine base to officer Timothy Harrison, who was working undercover with fellow officer Janis Brooks. Initially, Harrison approached Wilson on the street and Wilson led him to Speight who was standing nearby. Speight withdrew a small ziplock bag containing a white rock from a larger bag containing many similar ziplocks and handed the small bag to Wilson. Wilson dropped it on the ground and told Harrison to pick it up. Harrison did so and paid Wilson $20 in unmarked bills. After the transaction, the officers broadcast a description of Speight and Wilson over their car radio. The two men were spotted shortly thereafter and arrested by three police officers: Manuel Suber, Avis Packard-Jones and John Kelsey. During the arrest, Speight removed a large plastic bag and a substantial amount of cash from his pocket and threw them into the air. Kelsey retrieved the bag but, because of wind and traffic, was able to recover only $10 of the cash. Kelsey then field-tested the white substance in one of the ziplocks and it tested positive for cocaine. Kelsey also counted aloud the small ziplock bags inside the larger bag, within Suber's hearing, and found there were forty-nine. He placed the bags in an evidence envelope, which he did not seal, and drove the other two officers and the two suspects back to the police station.
 
 
 6
 When they returned to the station Suber himself counted the bags and also found there were forty-nine. A short time later Kelsey "heat-sealed" the envelope--according to the evidence tag at "2330" hours but according to Suber's testimony at 10:30 p.m.--and dropped it in the Drug Enforcement Agency drop box. The bag Harrison purchased turned out to contain .154 gram of cocaine base and the remaining forty-nine bags contained an additional 7.663 grams of cocaine base.
 
 
 7
 Both Wilson and Speight were charged with two counts: (1) distributing cocaine base in violation of 21 U.S.C. Sec. 841(b)(1)(c) and (2) possessing with intent to distribute cocaine base in violation of 21 U.S.C. Sec. 841(a)(1). Between the arrest and the trial, unbeknownst to Speight or his counsel, Kelsey was the subject of an internal police investigation regarding an unrelated incident and was placed on administrative leave. Apparently because of the pending investigation the government elected to present its case without putting Kelsey on the stand. Instead, to establish chain of custody, the government relied primarily on the testimony of Suber who had the drugs within his sight the entire time from the seizure until the envelope was deposited in the drop box. Although Speight's counsel learned of the investigation during the trial and was aware that Kelsey was present in the courtroom, he also declined to call Kelsey to testify.
 
 
 8
 At the close of the evidence, the jury deliberated for about a day and a half and convicted Speight on the distribution count. The court later sentenced him to ten years' imprisonment, the mandatory minimum, eight years' supervised release and a $50 special assessment.
 
 
 9
 On appeal Speight seeks reversal of his conviction on two grounds: (1) the government violated his right, under Brady v. Maryland, 373 U.S. 83 (1963), to be informed about the internal investigation of Kelsey and (2) the trial judge erroneously refused to give a "missing witness" instruction to the jury or to permit Speight's counsel to comment adversely in closing argument on Kelsey's failure to testify. For the reasons set out below, we conclude that both grounds are without merit and that Speight's conviction should be affirmed.
 
 
 10
 First, the fact of Kelsey's investigation does not fall within the scope of Brady 's mandate. Brady "requires disclosure only of evidence that is both favorable to the accused and 'material either to guilt or to punishment.' " United States v. Bagley, 473 U.S. 667, 674 (1985) (citations omitted). While "[i]mpeachment evidence, ..., as well as exculpatory evidence, falls within the Brady rule," id. at 676, the evidence must in either event satisfy Brady 's materiality requirement. Under Brady, "[t]he evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." Id. at 682. That is simply not the case here. The government adequately established chain of custody through Suber's testimony. We do not see how impeachment of Kelsey by reference to an unrelated investigation would have affected the reliability of Suber's testimony or the ultimate outcome of the trial. Cf. United States v. Williams, 985 F.2d 749 (5th Cir.1993) (finding no Brady violation, because no probability of different outcome, in government's failure to disclose that analyzing police chemist in cocaine trafficking trial was investigated for taking prescription drugs from crime laboratory when "[n]o evidence was discovered that [the chemist] pilfered or used cocaine in any form"); Tinsley v. Kuhlmann, 973 F.2d 163 (2d Cir.1992) (state court's preclusion of cross-examination of testifying officer regarding unrelated official misconduct, if error, was harmless given that "[t]he importance of the officer's testimony to the prosecution's case was minimal.").
 
 
 11
 We also reject Speight's claim that his conviction should be reversed because the trial court failed to give a "missing witness" instruction. Because Speight failed to object to the failure at trial we review only for "plain error," United States v. Sayan, 968 F.2d 55, 59 (D.C.Cir.1992), and find none. The decision to refuse a missing witness instruction rests within the discretion of the trial court. United States v. Tarantino, 846 F.2d 1384, 1404 (D.C.Cir.1988). To be entitled to such an instruction, a party must establish two predicates: (1) that the witness is in the peculiar control of the opposing party and (2) that an adverse inference from that fact is warranted. United States v. Norris, 873 F.2d 1519, 1522 (D.C.Cir.), cert. denied, 493 U.S. 835 (1989). Speight has clearly failed to carry his burden as to the first. Kelsey was present at the trial and, as the trial court repeatedly pointed out, Speight was free to call him as a witness. He elected not to do so. Accordingly, we find no error in the trial court's declining to give a missing witness instruction.
 
 
 12
 For the same reason, it was not error to prevent Speight's counsel from arguing that the government's failure to call Kelsey could lead to inferences adverse to the government. Where, as here, the missing witness is not peculiarly within the government's control, the refusal to permit such comment is not error. See United States v. Young, 463 F.2d 934, 943 (D.C.Cir.1972).